## ILLINOIS CENTRAL RAILROAD COMPANY

### V.

## LEMUEL LARSON, A MINOR, BY NEXT FRIEND, ETC.

*Railroads—Negligence of—Crossings—Personal Injuries—Contributory Negligence—Pleading.*

1.  All persons must exercise care to avoid injury.

2.  Though care on behalf of the plaintiff in a personal injury case may be charged in the declaration generally, the proof thereof to sustain it may be made up of many circumstances. If his care is not averred in the declaration, it must nevertheless be proved.

3.  It is not necessary in pleading to set out every circumstance specifically. It is sufficient, and the better practice, to set out the cause of action in a general way. It is not necessary to set out all the facts tending to show negligence. The pleader may characterize any action as having been done negligently, but need not show all the various facts from which negligence may be deduced.

4.  In an action brought to recover for a personal injury, alleged to have been received through the negligence of a railroad company at a crossing, this court holds that reasonable care was exercised by the person injured upon the occasion in question; that the servants of said company were negligent in backing down its train in front of the horses being driven by him; that a certain instruction given for the plaintiff was applicable under the fifth count of the declaration herein; and declines to interfere with the judgment for the plaintiff.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Kankakee County; the Hon. N. J. PILSBURY, Judge, presiding.

Mr. HARRISON LORING, for appellant.

Mr. H. K. WHEELER, for appellee.

LACEY, P. J.   This was an action in the case by appellee, who sues as the next friend of James A. Larson, a minor, for injuries received by him by the running away of his team while attempting to cross the railroad track of appellant at

67th street in the city of Chicago, Illinois, recovery being
$2,500.    The gist of the action was the alleged negligence on
part of appellant's servants, the conductor and brakeman of its
train of cars with an engine attached, in backing the car negli-
gently without notice to the injured party, James A. Larson,
while he, with a wagon loaded with slag, to which was attached
a team of horses, was attempting to cross the railroad track at
the crossing just behind the train, having just passed about
half way over the crossing and standing still.    The horses'
heads had just gone over the track and were in the act of
crossing behind the car, when one of the servants of the appel-
lant ordered him to stop, which he did, and turned his horses'
heads off the track to the north, while the train was headed
south and very close, when the car backed and ran the engine
close by the horses' heads, frightening them so that they
became unmanageable and thereupon they ran away, by reason
of which Larson was thrown out of the wagon and injured
severely.    His thigh bone was fractured and his head so
severely injured that there was concussion of the brain, from
which he has never recovered, so that he can not give any account
of the accident, and while his memory was good before the acci-
dent, it is entirely defective since.    Wells H. Fenton, the con-
ductor and collector of the train, gives the following account
of the accident:    The train in question was suburban and ran
no farther south than this station at 67th street, and they had
to back up from the point where it stopped and go to the
cemetery.    At the time it started back, the conductor was
nearly to the end of the back coach on the west side of the
train between the train and the station, and when he gave the
signal to back up he proceeded to go to the back end of the
train where the brakeman was.    As the conductor gave the
signal, the engineer or fireman rang the bell, the same time
the brakeman ran around to the platform.    As he got there
the train had just got under motion, and as it started he called
to young Larson to stop, and at the same time gave the signal
to the conductor or the engineer to stop, and the con-
ductor repeated it to the engineer, who applied the brakes
and stopped after the train had moved about two-thirds the

length of the passenger car. Before the train had started
from where it stopped to back up, it had not entirely cleared
the crossing. The conductor was not aware of the cause of
the signal to stop when it was given. When he got behind
the train, young Larson, the teamster, and the horses, were
pretty close to the side of the car, with the horses' heads
turned toward the north. When Fenton saw that the train
cleared the team, he again proceeded to back the train as he
had first started to do. After the second stop the bell was
rung and the train backed up, and after it had passed the team
straightened around with their heads to the west into the road
and started west over the crossing. From this point was
where the team started to run away, and, after running about
100 feet, young Larson, who was sitting on the front end of
the wagon, lost his balance and was thrown out and injured as
before stated. The brakeman's name was Rapp, and he it was
who called to young Larson to stop at the time he was about
to start across the track with the team. The horses' heads
were about three feet from the car when the second order to
back was given. The conductor could have pulled up the
train and let the team pass if he had so desired. The train
backed by the team not faster than you could walk, not over
four miles an hour. When young Larson was crossing, the
Michigan train was close behind him to the east on one of the
six railroad tracks at the crossing, the boy having driven his
team just ahead of it. As testified to by Lillie, who was haul-
ing another load of slag for the same party employing young
Larson, and was just behind him and saw the occurrence, when
the locomotive came back past the horses' heads, close to them,
the steam was coming out of the engine and they were jump-
ing and scared, and when the train passed the horses started at
once and ran away. The conductor said to Larson, " D——n
you, you can't go by here, we are going to back." This wit-
ness saw Larson hanging on to the lines for fifty or sixty feet,
but could not see him after that. The evidence tended to
show that young Larson was a capable boy to handle a team,
about fifteen years old, and was large and strong of his age, and
that the horses were reasonably gentle. It appears from an-

other eye witness, that when the train backed past the horses, they were so close to the car, that the car coming close to them made them shy off, as horses will do when anything comes close to them, and when the engine got along near the horses, they reared up and stood on their hind feet while the engine was passing them, and after it passed broke into a run. There was room for the team to pass before the train commenced to back the first time. The evidence also tended to show that the appellant's train had stopped, and that one team in the same company had passed, and that Larson's team was about to pass and was seen by the servants of the appellant, or should have been with ordinary care, as it was approaching the crossing, and that after this the train was negligently backed north, past and in front of the horses' heads of Larson.

It is insisted that the evidence fails to support the verdict in two particulars: First, that Larson did not use reasonable care in approaching the appellant's railroad track, and second, it was not sufficiently shown that appellant's servants were negligent in the time and manner of backing down the train in front of the horses. It seems to us that the verdict is sustained in both those particulars. We see no good reason to charge Larson, the driver of the team, with negligence. He saw that the train of appellant had passed the crossing, and there was no direct evidence, and very little circumstantial, showing that he knew that this particular train was in the habit of backing down onto the " Y " at that point, or that it would do so without giving notice. The other point of appellant's negligence, we think, was fairly left to the jury, and its finding in that respect was fully warranted. At the time the appellant's train backed down and came to a stop, and found the horses' heads so near the train, and Larson and his team in the condition described, there were two courses open to the servants of the appellant; the one to back down north past the horses, or to draw up the train south, and let the team pass over the crossing to the west before attempting to back the train. This would only have taken a short time, and under the circumstances would have been a much safer course as regarded the appellee. The running the four cars of

which the train consisted, together with the engine, emitting steam and smoke and sissing from the steam, past the horses' heads, under the circumstances, seems to us an act of gross negligence, when it was open to them to start the cars ahead, and get entirely out of the way of the horses in about half or two-thirds the length of one of the cars, and the jury were fully warranted in so finding. Besides, there was much evi̇ dence tending to show that appellant's servants saw the team approaching and in close proximity to the crossing, and restrained from going back by the Michigan Southern train behind it on an adjoining track before any signal was given to back the appellant's train. If this were so—and it was a question for the jury—it was certainly very reckless in attempting to back the train in front of appellee's horses. It is due to say the appellant strongly contests that allegation and introduces evidence to the contrary. Even if appellee's team was not seen before the backing of the train was commenced, the question still remained for the jury to say, from all the evidence, whether appellant was not negligent in not using more precautions to ascertain whether the crossing was clear, and the backing could be accomplished at that time without danger. We will not elaborate the evidence, but we think that there was evidence enough from which the jury might reasonably find against the appellant as to all the material facts. The next complaint of appellee is to the appellee's instructions.

We do not think that the appellee's second instruction is open to the criticism put upon it by appellant's counsel, to wit, that it in effect told the jury that the appellant's servants backed their train over the crossing negligently. It simply told it that they would not be authorized so to do under the law, though appellant's train might have the right of way across a public street. The fourth of appellee's instructions is complained of and was as follows, viz.:

" For the plaintiff, you are instructed that if you find from the evidence that the plaintiff, while exercising all due care and diligence on his part, attempted to cross a railroad crossing of defendant, and that a locomotive and cars approached the same, operated by appellant's servants, and stopped, and was

standing close to the said crossing, and that defendant's serv-
ants negligently and suddenly started the train back without
exercising ordinary care to ascertain if the plaintiff was in
danger, from backing said train, and after backing said train
defendant's servants, knowing of plaintiff's position, stopped
said train and examined into the condition in which plaintiff was
placed and ascertained it, and if you should further believe
from the evidence that the position of plaintiff was such that
a reasonable and prudent man would reasonably foresee that
if said train was again started backward, that injury would
probably result to plaintiff by his horses becoming frightened,
and that the servants of defendant then negligently and
improperly again started said train backward before plaintiff
could be extricated from his position and thereby his horses
became frightened and ran away, throwing plaintiff upon the
ground, without fault upon his part, and by reason thereof the
plaintiff sustained an injury, then if you further find from the
evidence that the plaintiff properly managed the team, then
and in that case you have a right to find for the plaintiff."

The main complaint to this instruction is that there is no
count in the declaration to which it can apply.  Without
noticing whether or not this instruction would be applicable
under all the counts in the declaration, we think it would be
under the fifth count, which, as abstracted, reads as follows,
to wit :

"That on October 15, 1889, plaintiff was riding in wagon
drawn by horses on crossing over railroad of defendant, pro-
vided by defendant, partly covering the ground with plank,
and as plaintiff was about to approach the crossing, and had
approached close thereto, defendant's locomotive and cars
approached the same and stopped, leaving sufficient room on
crossing for plaintiff to cross, and plaintiff attempted to cross,
when suddenly and negligently the defendant backed up train
and prevented plaintiff from crossing, and backed engine and
cars in front of team and made great noise and caused steam
and smoke to escape, frightening the horses and thereby
throwing the plaintiff upon the ground and injuring him."

The declaration, and especially the fifth count, sets out the

cause of action in a more general way than the proof showed, or the instruction points out, yet the cause of action set out in the fourth instruction is not variant from that in the fifth count. The declaration, as set out in the fifth count, omits any mention of the second stoppage of the train. We do not deem it necessary in pleading to set out every circumstance specifically. It is sufficient, and the better practice, to set out the cause of action in a general way. It is not necessary to set out all the facts tending to show negligence. The pleader may characterize any action as being done negligently, but need not show all the various facts from which negligence may be deduced. All the different facts which go to make up the cause of action in this case, took place in a very short space of time and are intimately connected. First, the approach to the crossing by Larson, the stopping of his team just as the car started back, either before or after starting to back the train in front of his horses and frightening them; and second, the various actions of appellant's servants. The law requires each party to be in the exercise of care as respects his conduct. Larson may have been negligent in approaching the train, or after he had approached it, and even negligent in a position where he could not retreat, or after the horses ran away, and before he was thrown from the wagon. The failure to exercise care in either of those particulars would have defeated his action. Though care on behalf of the plaintiff may be charged in the declaration generally, the proof thereof to sustain it may be made up of many circumstances. If plaintiff's care were not averred in the declaration, it must nevertheless be proved. The same rule would apply to the appellant, though reversed. All its acts in a legal sense causing an injury, must be done, to avoid liability, free from negligence, i. e., with care. The running too near the horses of appellee with the train was charged to be the central fact. A charge generally omitting unessential detail is sufficient. The second stopping was not essential to aver in the declaration, and need not be proved to show negligence. Even if appellant's servants had been free from negligence in backing the train after the first halt at the crossing, yet they were

responsible if they did not exercise reasonable care afterward to prevent the accident. Were they justified in continuing to back? If not, and damage resulted while Larson was in the exercise of care, notwithstanding they had exercised care in the starting of the train in the first instance, they would have been guilty. Again, if they had been negligent in first starting the train, in like manner appellant would have been guilty, even if, in the second start, they were in the exercise of care, if the cause of the injury could be traced to the first negligent starting. The fifth count charges the backing as one act, which it in reality was, and the negligence as applying to the starting, and also the act of backing in front of the horses. The charge of negligently backing the train would be supported by proof of negligently starting, or the negligent conduct during the backing, either one or both, as the result may be, approximately, traced to either or both acts of negligence in connection with the act of backing. The instruction really imposed a greater amount of proof of negligence on appellee than was required. It required a negligent starting to back the train, as well as negligence in starting it a second time, as the hypothesis of the instruction was that the injury, to justify recovery, must be caused by the negligent starting as well as negligence afterward. Negligence at either point of time could have been omitted from the instruction, and the instruction be good if the other were included. But it would not be vicious by requiring the proof of both.

The instruction was really more favorable to appellant than it need to have been. We see no other tenable objection to it.

We see no error in the modification in any of appellant's instructions, or in giving them as modified; neither is there any error in refusing appellant's refused instructions, first, second and third. The reasons are so obvious we need not refer to them in detail or at large.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*